IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

RAMAN PAL,

Petitioner,

vs.

DAVID EASTERWOOD, Field Office Director, St. Paul Field Office, Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary, U.S. DEPARTMENT OF HOMELAND SECURITY; TODD BLANCHE, Attorney General of the United States; DAVID VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement; and WARDEN/FACILITY ADMINISTRATOR, McCook Detention Center;

Respondents.

**4:26CV3370**

**MEMORANDUM AND ORDER**

This matter is before the Court on Petitioner Raman Pal's Petition for a Writ of Habeas Corpus (Filing No. 1). The Petitioner is a noncitizen facing removal from the United States and is detained by U.S. Immigrations and Customs Enforcement. He seeks immediate release from the custody of U.S. Immigration and Customs Enforcement ("ICE") at McCook Detention Center in McCook, Nebraska. The Petitioner alleges, inter alia, that his due process rights were violated when he was re-detained after being released on recognizance. (Filing No. 1 at 16-17). He asks the Court to outright release him, or in the alternative, order an individualized bond hearing. For the reasons set forth below, his petition will be granted in part, and the Court will order that he receive a bond hearing.

**BACKGROUND**

Raman Pal ("Petitioner"), whose immigration and court records also identify him as "Pal Raman" and "No Given Name Raman Pal," is a 22-year-old native and citizen of India. (Filing No. 1).

He entered the United States at or near Lukeville, Arizona in April 2023 and was encountered by Border Patrol. (Filing No. 1 at 1). He was not initially admitted or paroled. (Filing No. 1 at 1). On April 15, 2023, the Department of Homeland Security ("DHS") personally served the Petitioner with a Notice to Appear and charged him as inadmissible under Immigration and Nationality Act (INA) § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i). (Filing No. 1-3). The Notice to Appear designated the Petitioner as "an alien present in the United States who has not been admitted or paroled." (Filing No. 1-3). Petitioner was released on an Order of Release on Recognizance. (Filing No. 1-4). At that time, there was a contemporaneous determination that Petitioner's custody was governed by INA § 236(a), 8 U.S.C. § 1226(a), and that he was suitable for release on his own recognizance. (Filing No. 1-4). Petitioner applied for asylum and his application remains pending. (Filing No. 1 at 2).

The Petitioner was issued an Employment Authorization Document under category (c)(8), valid from November 7, 2023 through November 6, 2028. (Filing No. 1-5 at 2). Petitioner lived in Tracy, California, held a California Class A commercial driver license, and worked as a commercial truck driver. (Filing No. 1-5 at 1).

On October 7, 2026, a Lancaster County Sheriff's deputy stopped the commercial truck Petitioner was driving westbound on Interstate 80 in Lancaster County, Nebraska. Petitioner's truck was leaning heavily to the passenger side and traveling onto the shoulder of the roadway. (Filing No. 1-6 at 1). The Petitioner was ultimately arrested and charged in the County Court of Lancaster County with (1) criminal impersonation in violation of Neb. Rev. Stat. § 28-638(1)(c), a Class IV felony, and (2) theft by unlawful taking, $5,000 or more, in violation of Neb. Rev. Stat. §§ 28-511 and 28-518(1), a Class IIA felony. (Filing No. 1-6). He has not been convicted and the charges remain pending[1]. (Filing No. 1 at 3-4). The Petitioner posted bond and was released from Lancaster County Jail. (Filing No. 1-6).

Upon the Petitioner's release, ICE took him into immigration custody and transferred him to the McCook Detention Center, where he remains. (Filing No. 7 at 2). An immigration warrant was issued based upon "the pendency of ongoing removal proceedings." (Filing No. 7-2). The Petitioner's order of recognizance was not revoked at this time. (Filing No. 1 at 4). An immigration hearing is scheduled for January 4, 2027. (Filing No. 7 at 2).

The Petitioner seeks a writ of habeas corpus from this court. (Filing No. 1). He alleges that his detention without an individualized bond hearing violates the INA, its implementing regulations, and the Due Process Clause of the Fifth Amendment of the United States Constitution. (Filing No. 1 at 5).

[1] The Federal Respondents have not argued that these charges are a basis to detain the Petitioner.

He seeks immediate release on the conditions of his prior Order of Release on Recognizance, or, in the alternative, an order requiring the Respondents to provide an individualized bond hearing. (Filing No. 1 at 18). He also asks for an order permitting him to appear in person or by Zoom at the proceedings in his state criminal case while he remains in custody. (Filing No. 1 at 18).

The Court ordered Respondents to file a return on the petition within seven days to show cause why the petition should not be granted. The Federal Respondents[2] did so (Filing No. 4) and the Petitioner replied (Filing No. 9). The Court determined that a hearing was not necessary and considers the matter submitted on the parties' written arguments. *See* 28 U.S.C. § 2243.

**STANDARD OF REVIEW**

"Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Green*, 553 U.S. 674, 693 (2008). The Constitution guarantees that the writ of habeas corpus is available to every individual detained within the United States. *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. Art. I, § 9, cl. 2). The Court's jurisdiction to hear habeas challenges extends to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

Under 28 U.S.C. § 2241, a district court can grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Petitioner bears the burden to show his custody is unlawful. 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

**DISCUSSION**

The Petitioner claims that his release on recognizance was never revoked prior to his re-detention by ICE in October 2026, and that because he was not afforded meaningful notice or an individualized bond hearing, ICE violated his due process rights and the INA. (Filing No. 13 at 18-20). The Court finds that the Petitioner has carried the burden to show that his custody is unlawful.

The Federal Respondents do not contest that Petitioner had been released on recognizance at the time he was re-detained. (Filing No. 5 at 5). They assert that the Petitioner's detention is authorized under 8 U.S.C. § 1225(b)(2)(A), relying on *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). (Filing No. 5 at 4-5). They argue that *Avila* dictates a broad application of § 1225 that includes the Petitioner and "millions of aliens," regardless of whether they were initially paroled into the United States or released

[2] The Federal Respondents include all but the Warden of the McCook ICE Detention Center. The Warden filed a separate response taking no position "on the substantive issues raised in the Petition" or whether "Petitioner's writ should or should not be granted." (Filing No. 8 at 2).

on their own recognizance. (Filing No. 5 at 5). In other words, a noncitizen on parole or release on recognizance is a non-detained "applicant for admission" because they have "not been admitted." (Filing No. 5 at 5); *See Avila v. Bondi*, 170 F.4th 1128.

This court disagrees with that reading of Avila. *Avila* involved a noncitizen who were not detained at the border and entered the country "without inspection or admission." 170 F.4th at 1132. Here, the Petitioner was detained at the border and released on an order of recognizance on a Form I-220A under 8 U.S.C. § 1226(a)(2)(B). (Filing No. 1-4 at 1). The government took the Petitioner back into custody without giving him an opportunity to be heard. It now claims that the Petitioner is subject to mandatory detention under § 1225, even though his order of recognizance was issued under § 1226. The Federal Respondents' position that § 1225 applies to re-detention even after a noncitizen has been released from custody has been often rejected in this District and by this court. See e.g. *Keita v. Warden*, No. 8:26CV366, 2026 WL 3152150 (D. Neb. Oct. 21, 2026); *Antonio-Andres v. Mullin*, No. 8:26CV444, 2026 WL 2546997 (D. Neb. Aug. 28, 2026); *Chirinos-Pirona v. Mullin*, No. 8:26CV388, 2026 WL 2455164 (D. Neb. Aug. 21, 2026); *Silva v. Warden, Lincoln Cnty. Det. Ctr.*, No. 8:26-CV-131, 2026 WL 926725 (D. Neb. Apr. 6, 2026). Nothing in *Avila* permits the government to effectively recategorize immigrants who were conditionally paroled[3] under § 1226(a)(2)(B). *Id.*

The Due Process Clause prohibits the government from depriving any person "of life, liberty, or property, without due process of law." U.S. Const. amend. V. It applies to all "'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 694 (2001). Procedural due process claims "are examined under a two-part test: 'whether there exists a liberty or property interest which has been interfered with by the government'; and 'whether the procedures attendant upon that deprivation were constitutionally sufficient.'" *Cent. Specialties, Inc. v. Large*, 482 F. Supp. 3d 886, 895 (D. Minn. 2020), *aff'd*, 18 F.4th 989 (8th Cir. 2021) (quoting *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

In the immigration context, however, "the nature of [due process] protection may vary depending upon [immigration] status and circumstance." *Id.* Noncitizens are entitled to due process "in the context of removal proceedings." *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (citing *Reno v. Flores*, 507 U.S. 292, 306, (1993)). But because "Congress may make rules as to aliens that would be unacceptable if applied to citizens," the government "has more flexibility when dealing with

[3] "It is apparent that the . . . phrase 'release on recognizance' [is] another name for 'conditional parole' under § 1226(a)." *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007).

immigration." *Banyee v. Garland*, 115 F.4th 928, 931 (8th Cir. 2024) (quoting *Demore v. Kim*, 538 U.S. 510, 526 (2003)).

Here, even allowing the government the flexibility it is entitled to in this area, the Court concludes that the Petitioner did not receive the process he was due. First, he had a liberty interest in his continued release on his own recognizance in the community. *See Ferrufino Guerrero v. Mullin*, No. 4:26CV3146, 2026 WL 1679263, at *4 (D. Neb. June 10, 2026). To determine whether a conditional release in the immigration context creates a protected liberty interest, at least one circuit has "resolved the issue 'by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*.'" *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (citation omitted). In *Morrissey v. Brewer*, the Supreme Court found that parolees enjoy many "of the core values of unqualified liberty" and build their lives upon "at least an implicit promise that parole will be revoked only if [they] fail[ ] to live up to the parole conditions." 408 U.S. 471, 482 (1972). See also *Young v. Harper*, 520 U.S. 143, 147-49 (1997) (due process requires pre-deprivation hearing before revocation of pre-parole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context). Given the "grievous loss" caused by revocation of parole, the court held that those released on criminal parole were entitled to due process before having their parole revoked. *Morrissey v. Brewer*, 408 U.S. 471. *See also* *Silva v. Warden, Lincoln Cnty. Det. Ctr.*, 2026 WL 926725, at *2 (D. Neb. Apr. 6, 2026) ("A noncitizen conditionally paroled into the United States is analogous to a criminal parolee"). This Court has applied this approach in other cases involving immigration parole and found other petitioners had a liberty interest in continued release. *Keita v. Warden*, No. 8:26CV366, 2026 WL 3152150 (D. Neb. Oct. 21, 2026); *Chirinos-Pirona v. Mullin*, 2026 WL 2455164 (D. Neb. Aug. 21, 2026); *Ferrufino Guerrero v. Mullin*, 2026 WL 1679263 (D. Neb. June 10, 2026); *Sandhu v. Mullin*, 2026 WL 1146643 (D. Neb. Apr. 28, 2026).

As to the process owed in connection with re-detention, as a noncitizen conditionally paroled into the United States, the Petitioner has a liberty interest that "at the very least, entitles him to the procedures authorized by Congress." *Singh v. Noem*, 824 F. Supp. 3d 1197, 1210 (D.N.M. 2026); *Compare* *Antonio-Andres v. Mullin*, 2026 WL 2546997, at *2 (D. Neb. Aug. 28, 2026) (Applying *Mathews v. Eldridge*, 424 U.S. 319 (1976) and finding that re-detention of immigration noncitizen parolee without the opportunity for bond violates due process rights). Release under § 1226(a) "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk," and a noncitizen on release has a strong interest in remaining at liberty unless they no longer meet those criteria. *Martinez v. Mullin*, 2026 WL 2111747, at *3 (C.D. Cal. July 20, 2026). But because

the Federal Respondents have asserted that the Petitioner is subject to mandatory detention under § 1225(b)(2)(A), he has not received those procedures, including the chance to request a bond redetermination before an immigration judge.

In the context of this case, the Petitioner's liberty interest is rooted in his conditional release pursuant to 8 C.F.R. § 1236.1(c)(8). Under that regulation, immigration officers may exercise discretion to release certain noncitizens from custody if the noncitizen "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." It follows that for the Petitioner to have been released, immigration officers must have already made an individualized determination as to the appropriateness of detention. *Id.*; see *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 492–93 (S.D.N.Y. 2025) (reviewing statutory and regulatory basis for due process liberty interest). To revoke prior release under §1226(a), some process is required. See *Betancourth v. Tate*, 822 F. Supp. 3d 762, 768 (S.D. Tex. 2026). ICE is required to "engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause." *Id.* (quoting *Lopez Benitez v. Francis*, 795 F. Supp. 3d at, 492–93. At minimum, there must be "an individualized determination that release is no longer appropriate under the terms of that prior release." *Id.* Since civil immigration detention under 1226(a) is keyed to preventing flight and protecting against danger to the community, the Petitioner has a liberty interest in remaining at liberty unless he no longer meets those criteria. See *Martinez v. Mullin*, 2026 WL 2111747 (C.D. Cal. July 20, 2026).

In this regard, the Second Circuit has noted that although due process does not entitle a noncitizen parolee to the "full range of rights" he or she would have in a criminal prosecution, it was comparable to criminal postures such as supervised release or release on probation, where "an individual whose release is sought to be revoked is entitled to due process such as notice of the alleged grounds for revocation, a hearing, and the right to testify at such a hearing" *Villiers v. Decker*, 31 F.4th 825, 833 (2d Cir. 2022).

The Petitioner's order of recognizance required him to comply with certain conditions, including that he "must not violate any local, State, or Federal laws or ordinances." (Filing No. 1-4). Even if the government has cause to revoke the Petitioner's conditional parole, there is no evidence that the Petitioner was given notice or a meaningful opportunity to respond, and the government did

not establish by clear and convincing evidence[4] that the Petitioner is a flight risk or a danger to the community. This Court has reviewed the Petitioner's immigration arrest warrant and Notice to Appear and they do not reference the conditions of the Petitioner's release. (Filing No. 7-1; Filing No. 7-2). After the Petitioner was re-detained without a bond hearing, the order of recognizance was not cancelled. (Filing No. 1-4). Due process requires more. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985).

Further, 8 U.S.C. § 1226(b) provides additional requirements on the government to "revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." *Id.* A corresponding regulation provides:

> When an alien who, having been arrested and taken into custody, has been released, such release may be revoked at any time in the discretion of the district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge (except foreign), in which event the alien may be taken into physical custody and detained. If detained, unless a breach has occurred, any outstanding bond shall be revoked and canceled.

8 C.F.R. §§ 236.1(c)(9), 1236.1(c)(9). There is no question the statute gives the government "immense discretion." *Singh v. Noem*, 824 F. Supp. 3d at 1212. However, the act of revoking a bond or parole is a discretionary act and must be made by a listed officer in the above regulation. Even if the re-detention of the Petitioner could be considered an implicit revocation of parole, it was not done according to the regulations and no listed officer exercised discretion. (Filing No. 1).

In summary, ICE officers arrested the Petitioner without any meaningful opportunity to contest his re-detention. There is no evidence that ICE performed an individualized assessment of whether the Petitioner was a flight risk or danger to the community. (Filing No. 1). The Petitioner notes that when bond was set in his criminal proceedings, the court twice stated that it had considered all methods of bonds and conditions of release needed to reasonably assure Petitioner's appearance, to protect the alleged evidence, and to protect alleged victims, witnesses, and the community, together with the factors set forth in Neb. Rev. Stat. § 29-901.01. (Filing No. 1-6 at 9-10).

The Court finds that the Petitioner has shown a liberty interest in his continued release on his own recognizance, and that revocation of his conditional parole and his re-detention—particularly without notice of the revocation or an opportunity to respond—fell short of the process he is due. Under

---

[4] "As a general matter, the Supreme Court has long held that the clear and convincing evidence standard applies to civil detention where an individual's liberty interest is at stake." *Arostegui-Maldonado v. Baltazar*, 794 F. Supp. 3d 926 (D. Colo. 2025).

these circumstances, and in light of other developments in the Petitioner's removal case, it is necessary for an immigration judge to hold a hearing to determine whether the Petitioner's order of release on recognizance should be revoked or whether he should be released on bond during the pendency of removal proceedings against him. The government bears the burden of establishing by clear and convincing evidence that the Petitioner is a flight risk or danger to the community. See *Antonio-Andres v. Mullin*, 2026 WL 2546997 (D. Neb. Aug. 28, 2026); *Ferrufino Guerrero v. Mullin*, 2026 WL 1679263 (D. Neb. June 10, 2026); *Sandhu v. Mullin*, 2026 WL 1146643 (D. Neb. Apr. 28, 2026).

**THEREFORE, IT IS ORDERED:**

1. The Petition for Writ of Habeas Corpus (Filing No. 1) is granted in part and denied in part.
2. The Federal Respondents shall provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) before an immigration judge within 7 business days. At such a hearing, the government will be required to prove by clear and convincing evidence that Petitioner poses a flight risk or danger to the community.
3. If the Federal Respondents do not provide the Petitioner with a bond hearing as required, Petitioner must be immediately released from detention.
4. On or before December 7, 2026, the Federal Respondents shall provide the Court with a status update regarding the bond hearing or, if no bond hearing was held, advise the Court regarding Petitioner's release.
5. A separate judgment will be entered.
6. The Clerk of Court is directed to mail a copy of this Memorandum and Order and accompanying Judgment to Petitioner at his address of record.

Dated this 23rd day of November, 2026.

BY THE COURT:

Susan M Bazis

Susan M. Bazis
United States District Judge